IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | 4:23CR3117 |
| NICANDRO GARCIA PEREZ, | |
| Defendant. | MEMORANDUM AND ORDER |

This matter is before the Court on Defendant's Motion to Suppress (Filing No. 34), the Magistrate Judge's Findings and Recommendation (Filing No. 56) on that motion, and Defendant's Objection (Filing No. 69) to the Findings and Recommendation. The Court will overrule Defendant's Objection, adopt the Findings and Recommendation, and deny the Motion to Suppress.

## BACKGROUND

The underlying facts of this case are detailed in the Magistrate Judge's Findings and Recommendation. Therefore, the Court will not restate the entirety of the facts in this Memorandum and Order. However, the Court provides the following background as context for its ruling on Defendant's objections.

While on patrol on June 9, 2023, Nebraska State Patrol Trooper Alexander Winters ("Trooper Winters") received a report from a York County Deputy that a vehicle with a missing front license plate had pulled into a rest stop near mile marker 350. (Filing No. 55.) Trooper Winters proceeded to the rest stop, where he observed a vehicle matching the York County Deputy's description. (Filing No. 55.) The vehicle did not have a front license plate, but it had a rear California license plate. (Filing No. 55.)

Trooper Winters approached Defendant, who was standing outside the vehicle talking to his wife on the phone. (Ex. 101.) Trooper Winters asked Defendant if the vehicle belonged to him, to which Defendant responded it did. (Filing No. 29-2.) Trooper Winters asked Defendant, "Can I chat with you?," and Defendant responded, "Yeah." (Ex. 101). Trooper Winters then again asked Defendant, "You have time to chat?" (Ex. 101.) Defendant, who was still speaking on the phone,

responded, "No. I'm just, I'm talking to her." (Ex. 101.) Trooper Winters carried on asking Defendant questions about where he was from, and Defendant continued to provide responses. (Ex. 101.) Defendant also asked Trooper Winters some questions, such as whether he was married or had ever been to California. (Ex. 101.)

After speaking for a couple minutes, Trooper Winters asked Defendant for his driver's license, which Defendant provided. (Ex. 101.) Trooper Winters walked back to his patrol car to run Defendant's license and Defendant followed. (Ex. 101.) After Trooper Winters finished running Defendant's license, the two walked away from the patrol car back towards Defendant's vehicle and continued to engage in conversation. (Ex. 101.)

Approximately seventeen minutes into their interaction, Trooper Winters asked Defendant, "Can I search your car?" (Ex. 101.) Defendant responded, "You search my car? Why, I don't do nothing, you know." (Ex. 101.) Trooper Winters explained why he wanted to search, and Defendant said, "Yeah," gestured towards the vehicle, and then walked around the vehicle. (Ex. 101.) Trooper Winters told Defendant he was going to get some gloves and asked Defendant whether that was okay, and Defendant responded it was. (Ex. 101.) After he retrieved gloves from his patrol car, Trooper Winters asked Defendant if the vehicle was unlocked. (Ex. 101.) Defendant unlocked the vehicle with his key fob. (Ex. 101.) Trooper Winters searched the vehicle, located cocaine, and placed Defendant under arrest. (Filing No. 55; Ex. 101.)

On June 9, 2023, Nebraska State Patrol Sergeant Kevin Finn ("Sgt. Finn") obtained a search warrant for Defendant's phones. (Filing No. 29-3; Ex. 103.) The affidavit and application for the search warrant stated that the search of the vehicle yielded approximately 40 pounds of cocaine, and that during Defendant's arrest, an iPhone was located on Defendant's person and a flip phone was found in the center console of the vehicle. (Filing No. 29-3; Ex. 103.)

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), the Court may designate a magistrate judge to conduct an evidentiary hearing and submit "proposed findings of fact and recommendations for the disposition" of a motion to suppress. The Court then must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

# DISCUSSION

Defendant objects to the Magistrate Judge's findings that (1) the encounter between Trooper Winters and Defendant was consensual; (2) a determination of reasonable suspicion was not required because the encounter was consensual; (3) Defendant consented to the search of his vehicle; (4) the search warrant for Defendant's phones was valid; and (5) a *Franks* hearing was unnecessary. The Court will address each objection in turn.

1. **Consensual Encounter**

"Not every encounter between law enforcement officers and an individual constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Campbell*, 843 F.2d 1089, 1092 (8th Cir. 1988). "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking if he is willing to answer some questions, [and] by putting questions to him." *Florida v. Royer*, 460 U.S. 491, 497 (1983). An officer does not "seize" a person by asking to see his or her driver's license provided he does not "convey a message that compliance with [his] request is required." *United States v. Carpenter*, 462 F.3d 981, 985 (8th Cir. 2008) (reversing district court's ruling suppressing evidence and holding that no seizure occurred when an officer approached a vehicle stopped on the side of the road, asked the driver for his license and vehicle registration, and retained these documents for four or five minutes to examine them). Also, a law enforcement officer may also ask for consent to search, and doing so does not result in a "seizure" unless the officer secures the defendant's cooperation by coercive means. *United States v. Drayton,* 536 U.S. 194, 201 (2002).

A consensual encounter can, however, escalate into a seizure implicating the Fourth Amendment when, in view of the totality of the circumstances, the questioning is "so intimidating, threatening or coercive that a reasonable person would not have believed himself free to leave." *United States v. Hathcock,* 103 F.3d 715, 718 (8th Cir. 1997) (quotation omitted). "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick,* 501 U.S. 429, 439 (1991). Considerations relevant to this analysis include "officers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an

3

officer's indication the person is the focus of a particular investigation." *United States v. Lillich*, 6 F.4th 869, 875 (8th Cir. 2021) (quotation omitted).

The Magistrate Judge found that the encounter between Trooper Winters and Defendant was consensual. In reaching this conclusion, the Magistrate Judge observed that the encounter occurred in a public location with other individuals present; Defendant's freedom of movement was not restricted; Trooper Winters did not brandish a weapon; Trooper Winters was the only officer at the scene; Trooper Winters and Defendant engaged in a friendly, non-confrontational conversation; Defendant was only without his driver's license briefly; and Defendant was able to speak English and could communicate with Trooper Winters. (Filing No. 56.) Defendant argues these findings are in error. The Court has reviewed the evidence of record, including the video recording of the events, and agrees with the Magistrate Judge's determination that the encounter between Trooper Winters and Defendant was consensual.

Defendant contends he was immediately detained by Trooper Winters because Trooper Winters ignored his initial declination to speak to him, took his license, insisted that they go stand by Defendant's vehicle while Defendant's license was run, and did not tell him he could decline the search of his vehicle. However, when viewed in context and under the totality of the circumstances, the evidence shows Defendant was not immediately detained, nor was he detained at any time before Trooper Winters found drugs in Defendant's vehicle.

When Trooper Winters initially approached Defendant, Defendant agreed to speak to him. A couple seconds later, Defendant said he could not chat because he was on the phone. However, Defendant continued to engage in friendly conversation with Trooper Winters and answer questions. He did not take any steps to end his conversation or interaction with Trooper Winters. Trooper Winters did suggest that they move back towards the vehicle away from the patrol car while Defendant's license was being run, but Trooper Winters did not demand that Defendant do so. Trooper Winters did briefly take Defendant's license, but Defendant provided it to Trooper Winters without question or hesitation, and the license was returned within approximately four minutes. Once a driver's license is produced, "an officer can reasonably interpret the person's act of providing this document as consent to retain it for a brief examination or check." *United States v. Vargas-Miranda*, 559 F. Supp.2d 1016, 1025-26 (D. Neb. 2008). Trooper Winters' momentary retention of Defendant's license did not transform the encounter into a seizure. Further, once his license was returned, Defendant continued to speak to Trooper Winters and did not indicate that he wanted to leave.

4

Moreover, Trooper Winters was the only officer on the scene. He did not display his weapon, touch Defendant, raise his voice or otherwise indicate that compliance with his requests was required. Their interaction was friendly, and Defendant felt comfortable enough to even ask Trooper Winters personal questions. Trooper Winters did not position himself in such a way as to limit Defendant's freedom of movement—Defendant walked freely between his vehicle and the patrol car with no barriers surrounding them. It was only after Defendant provided consent to search that he was asked to stand in front of the vehicle. Defendant was not placed in handcuffs or placed inside the patrol car until after the cocaine was located.

In short, the totality of the circumstances does not support the conclusion that Defendant was detained at any time until the cocaine was found in his vehicle. Therefore, Defendant's objection to the Magistrate Judge's finding related to the consensual nature of the interaction between Defendant and Trooper Winters will be overruled.

2. **Reasonable Suspicion**

Given the Magistrate Judge's correct determination that the encounter between Defendant and Trooper Winters was consensual, it was not necessary for her to address whether reasonable suspicion existed in her analysis. Therefore, Defendant's objection to the Magistrate Judge's Findings and Recommendation based on reasonable suspicion is overruled.

3. **Consent to Search**

Defendant argues the Magistrate Judge incorrectly found that he consented to the search of the vehicle. "A defendant's voluntary consent to be searched is an exception to the Fourth Amendment's warrant requirement." *United States v. Esquivel*, 507 F.3d 1154, 1160 (8th Cir. 2007). A law enforcement officer may ask for consent to search even in the absence of reasonable suspicion, and doing so does not result in a "seizure" unless the officer secures the defendant's cooperation by coercive means. *Drayton,* 536 U.S. at 201. Courts determine whether consent is voluntary under the totality of the circumstances. *Esquivel*, 507 F.3d at 1160.

When evaluating whether consent was freely and voluntarily given, courts consider (1) age, (2) general intelligence and education, (3) whether the individual was under the influence of drugs or alcohol, (4) whether the individual was informed of his *Miranda* rights, and (5) whether the individual had experienced prior arrests and was thus aware of the protections the legal system affords suspected criminals. *States v. Chaidez,* 906 F.2d 377, 381 (8th Cir. 1990). Other factors considered include: the

length of time the individual was detained; whether the police threatened, physically intimidated, or punished the suspect; whether the police made promises or misrepresentations; whether the suspect was in custody or under arrest when the consent was given; whether the consent occurred in a public or a secluded place; and whether the suspect stood by silently as the search occurred. *Id*.

Defendant was 38 years old at the time he provided consent and was not under the influence of drugs or alcohol. (Filing No. 56.) Defendant had earlier experience with the legal system, as he had been previously charged with a three-count complaint (which was later dismissed after completing probation) and had also previously been fined for driving without a license. (Ex. 105; Ex. 106.) Trooper Winters did not threaten or intimidate Defendant to obtain consent. Defendant's encounter with Trooper Winters was friendly and non-confrontational. Trooper Winters did not display his weapon, touch Defendant, raise his voice or otherwise indicate that compliance with his request to search was required. Defendant's interaction with Trooper Winters occurred in a public place and Trooper Winters was the only officer present when consent was provided. Also, Defendant did not try to withdraw consent despite having time to do so while Trooper Winters retrieved his gloves, nor did Defendant attempt to hinder search efforts—Defendant unlocked the vehicle door for Trooper Winters without complaint. Further, as discussed above, Defendant was not detained or in custody at the time he provided consent.

Defendant argues he did not validly consent to the search because he has a limited understanding of English—his first language is Spanish. However, the Eighth Circuit has found that individuals can validly consent to searches despite language difficulties. *United States v. DeCruz-Mendes*, 970 F.3d 904, 908 (8th Cir. 2020). And in this case, the evidence shows that a language barrier did not prevent Defendant from understanding Trooper Winters' request to search the vehicle or other statements. Defendant was able to answer questions, follow directions, and correct Trooper Winters' misunderstanding of certain details—particularly, where Defendant resided. Defendant even spoke to his wife in English on the phone. (Ex. 101.) The record, viewed in totality, shows that Defendant knowingly and voluntarily consented to the search. In addition, as the Magistrate Judge noted—and this Court agrees—a "reasonable officer" in Trooper Winters' position "would believe consent was given and can be inferred from [Defendant's] words, gestures, [and] other conduct" described above. *United States v. Guerrero*, 374 F.3d 584, 588 (8th Cir. 2004). This is another reason why Defendant's argument fails. *See United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998). Therefore, Defendant's objection to the Magistrate Judge's finding regarding consent is overruled.

4. **Search Warrant**

Defendant contends the Magistrate Judge erroneously concluded that the search warrant for his phones was valid. Defendant argues that because the search of his vehicle was nonconsensual, and there was no reasonable suspicion or probable cause for his detention and the search, the warrant and any evidence obtained from the warrant is tainted. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). As explained above, the evidence derived from the search of the vehicle is not tainted—it was lawfully discovered and seized. The statement in the warrant affidavit that 40 pounds of cocaine was discovered in the vehicle supplied probable cause for issuance of the warrant. Therefore, Defendant's objection to the Magistrate Judge's conclusion regarding the validity of the warrant is overruled.

5. ***Franks* Hearing**

Defendant argues he is entitled to a *Franks* hearing because the affidavit in support of the search warrant contained misrepresentations and omissions. Defendant claims the warrant should have (1) indicated there was a language barrier; (2) contained information received by a York County Deputy regarding whether Defendant avoided police conduct, and (3) included certain statements made by Defendant. Defendant contends that without these facts, the conclusion that the warrant is valid is incorrect.

To obtain a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), Defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause." *United States v. Lucca*, 377 F.3d 927, 931 (8th Cir. 2004) (quotation omitted). The same analysis applies to omissions of fact. Defendant must show that (1) facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). This "substantial preliminary showing" is "not lightly met." *United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir. 1995).

Defendant is not entitled to a *Franks* hearing. Even if the warrant affidavit was corrected as Defendant deems appropriate, the affidavit would still state that 40 pounds of cocaine was found in the vehicle. This fact supplied probable cause to issue the warrant. Thus, the Magistrate Judge correctly found that a *Franks* hearing was not needed.

**IT IS ORDERED:**

1. Defendant's Objection to the Magistrate Judge's Findings and Recommendation ([Filing No. 69](#)) is overruled.
2. The Magistrate Judge's Findings and Recommendation ([Filing No. 56](#)) is adopted.
3. Defendant's Motion to Suppress ([Filing No. 34](#)) is denied and the matter will be set for trial by separate order.

Dated this 28th day of August, 2024.

BY THE COURT:

Susan M. Bazis
United States District Judge